# Admission Agreement

**EXHIBIT 1**

MINNESOTA

# Admission Agreement

NOTICE TO APPLICANTS FOR ADMISSION. READ YOUR ADMISSION AGREEMENT. ORAL STATEMENTS OR COMMENTS MADE BY THE FACILITY OR YOU OR YOUR REPRESENTATIVE ARE NOT PART OF YOUR ADMISSION AGREEMENT UNLESS THEY ARE ALSO IN WRITING. DO NOT RELY ON ORAL STATEMENTS OR COMMENTS THAT ARE NOT INCLUDED IN THE WRITTEN ADMISSION AGREEMENT.

A. Facility agrees:
   1. To provide basic room and board, general nursing care, social services, dietary services, and activities as required by law.  The Facility will provide the Resident the following information in connection with these services:
      a. Charges for items and services provided by the Facility and included in the basic daily rate.
      b. Charges for items and services provided by the Facility and *not* included in the basic daily rate.
      c. Items and services provided by the Facility and covered by Medicaid.
      d. Items and services provided by the Facility and covered by Medicare.
      e. Charges for items and services provided by the Facility and *not* covered by Medicaid *or* included in the basic daily rate.
      f. Charges for items and services provided by the Facility and *not* covered by Medicare *or* included in the basic daily rate.
      All of the foregoing charges are subject to change upon reasonable notice.  The Resident will be informed of these listings and any changes in them.  If there are other services the Resident requires that the Facility does not provide, transportation will be arranged, upon request, for the Resident to the place where service will be received.  These services and transportation must be paid for by the Resident or Voluntary Guarantor unless they are paid for by Medicare or Medicaid or another third party payor.
   2. To assist, provide, or obtain, as required by law, the services of providers of the Resident's choice for necessary care in order to reasonably accommodate the Resident's individual needs and preferences.  These providers are expected to comply with all policies and procedures of the Facility and all federal and state laws.

B. The Resident agrees:
   1. To the administration of such services as are required for the Resident's general well-being, health, and safety, as the Resident, Facility, and the Resident's attending physician deem appropriate, except where the Resident has indicated in writing to the Facility and the Resident's attending physician that a particular service is refused to the extent permitted by law.
   2. To have an attending physician who is available and who will visit the Resident regularly and in an emergency according to the policies of the Facility and state and federal law.  The Resident's attending physician or, in the event the attending physician is not available, that physician's designee or an alternate physician designated by the Resident, may be contacted to care for the Resident at the discretion of the Facility.
   3. To provide the Facility with a copy of any written document indicating the Resident's choices for treatment of a terminal illness and/or the use of life-sustaining medical treatment.  This document may be called a Living Will, Declaration to Physicians, or Durable Power of Attorney for Health Care.
   4. To abide by all rules, regulations, policies, and procedures as are from time to time established by the Facility and to comply with applicable federal, state and local law.
   5. To certify that the information given to enable the Facility to assist the Resident to apply for benefits under Titles XVIII and XIX of the Social Security Act is correct; further, that the Facility is hereby authorized and directed to release information concerning the Resident to insurance companies, federal fiscal intermediaries and/or state and federal agencies, and regulatory bodies, in connection with care

1

rendered or to be rendered to the Resident to the extent necessary for the Facility to assist the Resident in obtaining payment and otherwise comply with applicable laws.
   6. To give the Facility reasonable notice of intent to vacate and to vacate the Facility within the time specified in a notice of transfer or discharge issued by the Facility or a notice of intent to vacate from the Resident.

C. The following financial provisions are applicable to Private Pay Residents only. The Resident and/or Voluntary Guarantor agree:
   1. To be financially responsible for all charges accruing under this Agreement.
   2. To pay monthly, in advance, the basic daily rate in effect at the time the services are provided. Upon admission, payment shall be made for the day of admission and for any remaining days of the current month plus an advance payment for the following month.
   3. To pay promptly when billed. If payment is not made within ten (10) days, the Facility may add a late charge, not to exceed the maximum percentage rate permitted by law, to the payment due until full payment is received by the Facility. A failure to make full payment within the specified period may be treated by the Facility as grounds for termination of this Agreement where permitted under applicable law. In the event that this account becomes delinquent and past due, the Resident's account may be assigned to a collection agency. The Resident agrees to pay all costs of collections including interest, court costs, sheriff's fees, attorney fees, and collection fees as may be necessary. In addition to the above, the reasonable and customary cost of collections will be added to the outstanding balance upon assignment to a collection agency, for which the Resident will be responsible.
   4. To pay the established rate for holding a vacant bed in compliance with the Facility's Policy on Bed Hold and Readmission.
   5. To settle all accounts with the Facility, in full, at the time of discharge. Upon discharge, the Facility shall refund to the Resident any unused portion of the monthly rate prorated on a daily basis after deduction of all applicable charges.
   6. To be jointly and severally liable for all charges accruing under this Agreement. Voluntary Guarantor agrees to satisfy the Resident's account in the event that the Resident's won funds are insufficient.
   7. To assume financial responsibility for any legal charges arising from proceedings to appoint a Guardian or Conservator for the Resident.
   8. To be financially responsible to the Facility for all charges not covered by the Resident's benefit plan and to pay, upon the Facility's request, the estimated non-covered charges prior to the completion of an insurance bill or claim.

D. The following financial provisions are applicable to Medicare, Medicaid, and other third party payor Beneficiaries only. The Resident and/or Voluntary Guarantor agree:
   1. To pay for items and services provided but not covered by Medicare, Medicaid, or any other third party payor.
   2. To pay promptly when billed. A failure to make payment within the specified period may be treated by the Facility as grounds for termination of this Agreement where merited under applicable law. The Resident agrees to pay the reasonable expenses of collection, including costs, disbursements, and attorney's fees.
   3. To pay the established rate for holding a vacant bed that is not otherwise held by Medicaid or another third party payor in compliance with the Facility's Policy on Bed Hold and Readmission.
   4. To settle all accounts for which the Resident is personally responsible with the Facility, in full, at the time of discharge.
   5. To be jointly and severally liable for all charges accruing under this Agreement. Voluntary Guarantor agrees to satisfy the Resident's account in the event that the Resident's own funds are insufficient.
   6. To assume financial responsibility for any legal charges arising from proceedings to appoint a Guardian or Conservator for the Resident.

2

E. General Agreements:
1. The Resident authorizes the Facility to take the Resident's photograph upon admission. The Facility will only use the photograph for the purpose of assisting staff or others in identifying the Resident. In cases of unauthorized absence from the Facility, the photograph will be given to the proper authorities for purposes of identification.
2. That custody of the Resident shall be assumed by the Resident or Legal Representative upon discharge, if this is medically appropriate as certified by the Resident's attending physician or the Facility's medical director, and if it is not in violation of state law.
3. In the event the Resident knowingly leaves the Facility against the medical advice of the Resident's attending physician and/or without the approval of the Facility, but with the knowledge of the Facility, all responsibility of the Facility for the Resident's welfare shall terminate.
4. The Facility is not responsible for the welfare of any Resident who is temporarily away from the Facility under the care of any person not directly employed by the Facility.
5. The Facility shall not be liable to the Resident or Legal Representative or Voluntary Guarantor, or his or her respective heirs, assigns, representatives, or estate for any damages incurred by the Resident except if said damages are caused by the negligence of the Facility, its employees, or agents acting within the scope of their employment or agency. It is understood and agreed that the Facility is not in any manner to be considered an insurer of the health, safety, or welfare of the Resident or the Resident's property.
6. The Facility shall not be responsible for the loss of money or loss or damage to jewelry, documents, or other personal property retained in the Resident's possession except if such loss is caused by the negligence of the Facility, its employees, or agents acting within the scope of their employment or agency, unless otherwise required under state law.
7. The Resident agrees that if the presence of any of his or her personal possessions violates local, state, or federal laws, rules, or regulations, or policies of the Facility, the Facility has the right to require the Resident to remove them.
8. Any personal belongings that are left with the Facility after the Resident's discharge should be picked up as soon as possible. The Facility will dispose of them if not removed within 30 days or as otherwise required by law.
9. All medical care provided to the Resident by the Medical Director or any other physician is a part of that physician's independent medical practice and is not provided by or on behalf of the Facility.
10. The Facility may cooperate in various educational programs. The Resident is advised that students involved in educational programs affiliated with the Facility may attend examinations of the Resident and review the Resident's medical record. If the Resident does not wish to participate in an educational program, he or she may refuse at any time.
11. The Facility may terminate this Agreement and discharge or transfer the Resident in accordance with federal and state laws.
12. This Agreement represents all of the understandings between the parties, and there are no conditions, terms, or provisions affecting this Agreement which are not specifically contained herein. This Agreement shall not be modified, altered, or otherwise subject to any oral statements or representations not incorporated in writing in this Agreement.
13. The Facility operates under and in compliance with the terms of Title VI of the Civil Rights Act of 1964. The Facility does not discriminate on the grounds of race, color, gender, age, national origin, religion, marital status, disability, payor source, or other protected class in the admission and treatment of Residents, the accommodations provided, the use of equipment and other facilities, and/or the assignment of personnel to provide services.
14. If any terms or conditions of this Agreement are invalid or unenforceable by reason of any rule of law, federal or state statute, or regulation, this Agreement shall be deemed amended to comply with the relevant law, statute, or regulation and shall remain in full force and effect.
15. In the event that collection efforts become necessary, the Facility has the right to obtain a credit history report for the Resident.

F.  Assignment of Benefits:  Except where prohibited by law, the Resident agrees to the following assignment of benefits.  Except where the Resident's health care benefit plan(s) provides for automatic payment of benefits to the provider of services, the Resident authorizes payment of benefits, otherwise payable to the Resident, to the Facility for services rendered by the Facility, as indicated on an accompanying bill or claim.  Until revoked in writing by the Resident, this assignment of benefits shall remain valid and in force for the Facility.

G.  Acknowledgment: The Resident acknowledges the receipt of each of the documents listed below.  The Resident has read these documents or the documents have been explained to the Resident.

| ☐ **Complete Admission**      Date:_____ | ☐ **After Hours Admission**   Date:_____ |
|---|---|
| 1. Resource Guide which includes:<br>    a. Bed-Hold and In-House Transfer Policy<br>    b. Restraint Policy<br>    c. Privacy Act Notification Statement<br>    d. Resident Concern Policy<br>2. Bill of Resident Rights<br>3. Advance Directives Policy and Record<br>4. CPR Consent<br>5. Payor Agreement<br>6. Payor Confirmation<br>7. Resident Personal Funds Authorization<br>8. Schedule of Charges<br>9. Permission to open personal mail  ☐ Yes  ☐ No<br>10. Permission to open financial mail  ☐ Yes  ☐ No | 1. Admission Agreement<br>2. Bill of Resident Rights<br>3. Advanced Directives<br>4. CPR Consent |

4

By our signatures, we acknowledge that we have received, read, and executed this Admission Agreement and all of the documents listed above, which have been incorporated by reference herein. EXCEPT IN THE CASE OF A FINANCIALLY RESPONSIBLE SPOUSE, AND EXCEPT FOR THE LEGAL REPRESENTATIVE FOR FINANCIAL DECISION'S OBLIGATIONS UNDER THIS AGREEMENT, THE LEGAL REPRESENTATIVE IS AWARE THAT THE FACILITY MAY NOT REQUIRE HIM/HER TO ASSUME PERSONAL FINANCIAL RESPONSIBILITY FOR THE RESIDENT'S CARE, UNLESS HE/SHE HAS OTHERWISE AGREED TO BE THE RESIDENT'S VOLUNTARY GUARANTOR.

_Laura Bernskin_  
Name of Resident (PRINT)

_Texas Terrace_  
Name of Facility (PRINT)

Signature- Resident

Date

X _____  
Signature- Legal Representative

(PRINT) Name and Title  
(Guardian, Conservator, Power of Attorney)

2/15/05  
Date

Signature- Voluntary Guarantor

Date

Signature- Facility Representative and Title

2/15/05  
Date

If Resident signs with an "x" or mark, two witnesses must also sign.

Signature- Witness        Date        Signature- Witness        Date

**DISTRIBUTION-** (1) RESIDENT, (1) BUSINESS OFFICE MANAGER FOR RESIDENT FINANCIAL FILE

5