**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Laura Bernstein, individually and on behalf of All Others Similarly Situated, | Civil No. 08-5874 (DWF/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Extendicare Health Services, Inc. and Extendicare Homes, Inc. | |
| Defendants. | |

Brad J. Moore, Esq., Kevin Coluccio, Esq., and Paul L. Stritmatter, Esq., Stritmatter Kessler Whelan Coluccio; David M. Medby, Esq., and Stephen M. Garcia, Esq., The Garcia Law Firm; and Gale D. Pearson, Esq., Kenneth L. LaBore, Esq., and Stephen J. Randall, Esq., Pearson, Randall & Schumacher, PA, counsel for Plaintiff.

Barbara J. Duffy, Esq., Ryan P. McBride, Esq., and Vicki L. Smith, Esq., Lane Powell PC; and Steven E. Rau, Esq., Flynn Gaskins & Bennett, LLP, counsel for Defendants.

**INTRODUCTION**

This matter is before the Court upon a Motion to Dismiss brought by the Defendants Extendicare Health Services, Inc. and Extendicare Homes, Inc. ("Defendants"). For the reasons set forth below, the Court grants Defendants' motion.

**BACKGROUND**

Defendants own and operate nursing homes in numerous states, including Minnesota. Plaintiff Laura Bernstein ("Plaintiff") is a resident in the Texas Terrace Nursing Home owned by Defendants and located in Minnesota. Plaintiff has asserted claims against Defendants under Minnesota law for alleged violations of the Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68-.70, the Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-.48, and the False Statement in Advertisement law, Minn. Stat. § 325F.67.[1] Plaintiff also claims that, in addition to civil penalties allowed pursuant to these statutes, she is entitled to the enhanced penalties provided under Minn. Stat. § 325F.71 for violations of such laws directed toward senior citizens and disabled persons.

Plaintiff contends that Defendants violated these Minnesota statutes by making false representations regarding the quality of care in their facilities. According to

---

[1]     In her Complaint, Plaintiff also asserted a claim under the Minnesota Vulnerable Adults Act ("VAA"), Minn. Stat. §§ 626.557 and 626.5572. Plaintiff filed an Amended Complaint during the hearing on the Defendants' present motion. Plaintiff's Amended Complaint no longer includes a claim under the VAA and, therefore, Plaintiff has abandoned her VAA claim. In any event, the Court notes that Plaintiff's VAA claim was based on a misinterpretation of the statute. Plaintiff contended that nursing homes are mandated reporters under the VAA and that Defendants had failed to fulfill the reporting obligations the VAA imposes on mandated reporters. Nursing homes are "facilities" under the statute; facilities are not included in the definition of the term "mandated reporter" though their employees are considered mandated reporters. *See* Minn. Stat. § 626.5572, subd. 6 (defining "facility"), subd. 16 (defining "mandated reporter"). Facilities are required to establish procedures to ensure reporting of suspected abuse and to pass on to designated authorities any internal reports of maltreatment they receive from mandated reporters. Minn. Stat. § 626.557. The statute, therefore, draws a distinction between mandated reporters and facilities and imposes different obligations upon each of them. As Plaintiff's claim was based upon a misreading of the VAA, her VAA claim would not have been successful.

Plaintiff, though Defendants claimed to provide quality care, Defendants utilized admissions policies that actually led to substandard care. Plaintiff further claims that the care provided to patients receiving Medicaid was particularly poor. Plaintiff also contends that this action is appropriate for class action status.

Defendants counter that the alleged fraudulent statements are non-actionable and that the Plaintiff has failed to plead her claims with particularity.[2] Defendants also argue against class action certification in this case. Defendants request that the Court dismiss Plaintiff's claims.

## DISCUSSION

The Court concludes that Plaintiff fails to state a claim upon which relief may be granted. The Court must, therefore, dismiss the Plaintiff's Complaint.

**I.      Legal Standard**

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview*

---

[2]      In her opposition to the motion, Plaintiff requested that she be permitted to amend her Complaint in the event the Court determined that she had failed to plead her allegations with sufficient particularity. Plaintiff filed her Amended Complaint before the Court had an opportunity to rule on this request. At the time of the hearing on this matter, Defendants had not yet reviewed the Amended Complaint and objected to the Court's consideration of this new filing. The Court has reviewed the Amended Complaint in its entirety, and will consider the Amended Complaint in connection with this motion because the Court concludes that the content of the Amended Complaint does not alter the result in this case.

*Gardens,* 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964-65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965.

## II.  Failure to State a Claim

Plaintiff contends that Defendants made misrepresentations and material omissions of fact upon which they intended Plaintiff and other similarly situated persons to rely via the Defendants' Internet web-site and in the Defendants' facility admissions agreement. According to Plaintiff, these statements misrepresented the quality and character of Defendants' services, violating several state consumer protection statutes. *See, e.g.,* Minn. Stat. §§ 325F.69, subd. 1 (prohibiting the use of fraud or misrepresentation with the intent that others rely thereon in connection with the sale of merchandise); Minn. Stat. § 325D.44, subd. 1(5) (identifying a representation that goods or services have characteristics or benefits they do not have as a deceptive trade practice)

4

and 1(7) (stating deceptive trade practices include representing goods and services are of a particular standard, quality or grade if they are of another); Minn. Stat. § 325F.67 (prohibiting the use of untrue, deceptive or misleading statements in advertisements made available to the public with the intent to sell merchandise or services).

Specifically, Plaintiff identifies as actionable Defendants' statements that they will provide care in accordance with or exceeding applicable laws and regulations. Plaintiff cites several statements from Defendants web-site as materially misrepresenting the quality and characteristics of the services Defendants provide. Plaintiff identifies one such statement as: "Extendicare has always maintained quality standards above government regulations and this is a tradition that will continue within our new operating structure." (Compl. ¶ 2, Ex. 1.) Plaintiff also contends that Defendants' "Code of Conduct" distributed on Defendants' web-site contains the misleading statement that "Extendicare Health Services, Inc. is committed to providing health care services in compliance with applicable laws and regulations." (*Id.* ¶ 3.) Another alleged misrepresentation from Defendants' website is the statement that Defendants "have established rigorous standards to ensure that we meet the physical, spiritual, social, emotional and intellectual needs of our residents and health care customers." (*Id.* ¶ 47, Ex. 1.) Further, Plaintiff contends that Defendants materially misrepresented their services by stating in their admission agreement that Defendants would provide "basic

room and board, general nursing care, social services, dietary services, and activities as required by law."[3]  Plaintiff alleges she relied on these representations to her detriment.[4]

Plaintiff contends that Defendants' statements are misrepresentations because, according to Plaintiff, Defendants do not operate their nursing homes in accordance with legal standards.  Plaintiff notes that state regulatory officials have cited Defendants' nursing homes with deficiencies, showing that Defendants have not complied with all applicable legal standards.  Plaintiff argues that Defendants have also violated state laws and regulations by including prohibited terms in their admission agreements.  Plaintiff contends that Defendants, in an effort to seek additional profits, have adopted an admissions policy that discourages admission of Medicaid patients and that Medicaid patients, particularly those without families, are transferred to other homes to make beds available for Medicare or private pay patients.  Plaintiff further alleges that Defendants have adopted a policy mandating admission of patients with certain medical conditions

---

[3] Plaintiff's Complaint included the admissions agreement as an attachment, but the Complaint did not emphasize any alleged misrepresentation in the admissions agreement. Plaintiff's substantive arguments regarding the admissions agreement first appeared in her opposition to the Defendants' Motion to Dismiss, and the statement in the admissions agreement is a central allegation in her Amended Complaint.  The Court will consider this argument as though raised at the outset of the case.

[4] Plaintiff's Complaint lacked any allegation that Plaintiff relied on the Defendants' statements.  In fact, Plaintiff's admission agreement was signed after she entered the nursing home, suggesting that she could not have relied on its terms in selecting that particular facility.  Plaintiff's Amended Complaint includes the allegation that she and others relied on Defendants' statements.  The Court determines that this issue is immaterial to the resolution of the issues presented at this time.

6

without regard to the capacity of the Defendants' facilities to provide adequate care, leading to violations of law.[5]

Defendants respond that the statements Plaintiff identifies are non-actionable "puffery." Defendants contend that these statements cannot serve as the basis for claims under Minnesota consumer protection statutes. Defendants, therefore, argue that Plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The Court agrees with Defendants.

Puffery includes exaggerated blustering or boasting and vague, subjective statements of superiority. *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004) (holding statement that product was "America's Favorite Pasta" was puffery); *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1498 (D. Minn. 1996) (adopting report and recommendation concluding statement that lens maker used the "most advanced equipment available" was puffery). General assertions of quality are also puffery because "quality" is a vague, subjective concept. *Am. Italian Pasta Co.*, 371 F.3d at 393; *see also Evanston Hosp. v. Crane*, 627 N.E.2d 29 (Ill. App. Ct. 1993) (holding that statements that hospital would provide "high quality" care to patients were expressions of opinion or "puffing"); *Porous Media Corp.*, 173 F.3d 1109 (holding

---

[5] In making this allegation, Plaintiff relies in part upon a script through which a member of Defendants' staff is directed to inquire into the health conditions of a potential resident when determining whether to take the admission. (Am. Compl. ¶ 10, Ex. 5.) Plaintiff filed only a redacted copy of this script. The Court requested an unredacted copy of the script, but after several inquiries from the Court, Plaintiff's counsel indicated that they do not possess an unredacted version of the document. As the Court is unable to examine this document fully, it is of limited value.

statements of product superiority and that product was "industry approved" were puffery).

The contrast between puffing statements and statements constituting fraud can be seen in *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990 (7th Cir. 2004). In *Corley*, the plaintiff contended that the nursing home engaged in a scheme to fill its beds by fraudulently inducing residents to sign contracts for nursing home services. 388 F.3d at 1003. The Plaintiff alleged that the nursing home made a number of fraudulent statements about the care the nursing home would provide. For instance, the plaintiff contended that the nursing home fraudulently represented that it provided high quality care, but in fact had a policy requiring it only to meet minimum standards imposed by the state. 388 F.3d at 1008. The Seventh Circuit, however, determined that the generic promise to provide high quality care was puffery; no reasonable person would rely on such a statement and, therefore, the statement was not material. *Id*. at 1009. The Seventh Circuit also considered as puffery the nursing home's statement in a sales brochure that a nurse would be on duty in the dining hall, acting as a maitre d', to look after patients during meals. *Id*. The court noted that "sales brochures contain all sorts of puffery" and held that this statement was also immaterial. *Id*.

In contrast, the Seventh Circuit noted that some residents of the nursing home had prevailed in a separate state court lawsuit under the Illinois consumer fraud statute. *Id*. at 996. Those patients claimed that the nursing home promised continuing care for Medicaid eligible patients but failed to provide such continuing care; the nursing home was never eligible to serve Medicaid patients and an affiliated facility ceased its

participation in the Medicaid program and stopped providing care to residents receiving Medicaid. *Id*. at 998. A promise of continuing care and services under a specifically identified program, therefore, is substantially different from general statements that care will be of high quality.

In this case, the statements Plaintiff identifies in her Complaint and Amended Complaint are so general and unspecific that they cannot serve as the basis for a claim under any of the consumer protection statutes upon which Plaintiff relies. None of the statements references any particular standard or makes any specific promise. Statements that a nursing home will comply with or exceed "applicable laws," or that it has established "rigorous standards," are similar to statements that services provided will be "high quality." These statements are puffery. Further, the statement in the admissions agreement that services will be provided "as required by law" is a redundancy. Nursing homes are required by law to provide certain services under a comprehensive regulatory scheme. The admission agreement's recitation of that fact does not create a promise independent of the legal obligations already imposed by State and Federal laws and regulations.

It is possible that the Defendants are violating state laws and regulations and are not providing adequate care to residents. Plaintiff may have rights and remedies available to her under applicable laws for any such violations. A consumer protection action simply is not the path to resolution of those issues and neither the Plaintiff's original Complaint, nor her Amended Complaint, state a cause of action. Plaintiff's claims must, therefore, be dismissed.

As the Court has determined that Plaintiff fails to state a claim, the Court does not address Defendants' argument that Plaintiff failed to plead her fraud claims with sufficient particularity. Fed. R. Civ. P. 9(b). The Court also denies Plaintiff leave to amend. Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires." Here, however, Plaintiff has already filed an Amended Complaint and the Court has considered this pleading in reaching its decision. As the Amended Complaint failed to identify any solid ground on which the Plaintiff could stand in this litigation, the Court respectfully concludes that another attempt to amend would not likely be fruitful.

## CONCLUSION

According to the Plaintiff, she is a vulnerable and disabled adult who was injured while in Defendants' care. Plaintiff also contends that she has received services that are inadequate and that her nursing home generally does not provide quality care.[6] The Court is very sympathetic to the Plaintiff. Plaintiff, however, has not asserted a claim against Defendants for negligence related to an injury or for violation of specific substantive laws or regulations. Instead Plaintiff seeks to initiate a class action against Defendants for violation of Minnesota consumer protection laws. Plaintiff may well have

---

[6] The Court inquired at the hearing whether Plaintiff had sought admission at another facility, given her allegations regarding substandard care at her current facility. Plaintiff's counsel represented that Plaintiff was not able to transfer to another facility because no other facility would take the Plaintiff due to her status as a Medicaid recipient. The Court inquired as to the number of facilities to which Plaintiff has applied and been turned away, but Plaintiff's counsel was unable to provide the Court with this information.

claims against the Defendants, but a consumer protection class action does not lie on the facts Plaintiff has alleged.[7]

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Motion to Dismiss brought by Defendants Extendicare Health Services, Inc. and Extendicare Homes, Inc. (Doc. No. 7) is **GRANTED**.

2. Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**.

Dated: March 4, 2009              s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  Judge of United States District Court

---

[7] At the hearing on this motion, Plaintiff's counsel asserted that the issues presented in this case were of national importance. Plaintiff's counsel also took great umbrage with Defendants' suggestion that this suit was styled as a consumer protection class action because of the attorney fees such a suit could yield and stated that "[l]awyer-driven litigation is what made this country great." (Tr. at 57.) The Court agrees that there are complicated and vexing issues regarding the quality of care provided to elderly and infirm persons, especially those who are indigent, and that these are matters of great concern. The Court also notes that Plaintiff, along with other nursing home residents, is entitled be treated with respect and dignity. It may be that serious scrutiny regarding Plaintiff's care should be applied by the Minnesota Departments of Health and Human Services. The Court hopes that Plaintiff's counsel is seriously committed to ensuring proper care for the Plaintiff and that the three law firms and eight individual attorneys representing her will assist her in pursuing any negligence claims she may have or in bringing complaints about the quality of her care to appropriate regulatory authorities, notwithstanding that these actions may not be as lucrative.