# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Laura Bernstein,  
individually and on behalf of  
All Others Similarly Situated,

      Plaintiff,

v.

Extendicare Health Services, Inc. and  
Extendicare Homes, Inc.

      Defendants.

Civil No. 08-5874 (DWF/JSM)

**ORDER AND MEMORANDUM**

---

Brad J. Moore, Esq., Kevin Coluccio, Esq., and Paul L. Stritmatter, Esq., Stritmatter Kessler Whelan Coluccio; David M. Medby, Esq., and Stephen M. Garcia, Esq., The Garcia Law Firm; and Gale D. Pearson, Esq., Kenneth L. LaBore, Esq., and Stephen J. Randall, Esq., Pearson, Randall & Schumacher, PA, counsel for Plaintiff.

Barbara J. Duffy, Esq., Ryan P. McBride, Esq., and Vicki L. Smith, Esq., Lane Powell PC; and Steven E. Rau, Esq., Flynn Gaskins & Bennett, LLP, counsel for Defendants.

---

This matter is before the Court upon a Motion for Reconsideration brought by Plaintiff Laura Bernstein. Based upon the submissions and argument in this case, the Court having reviewed the contents of the file and record, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

1. Plaintiff's Motion for Reconsideration (Doc. No. 48) is **DENIED**.

Dated: June 11, 2009            s/Donovan W. Frank  
                                             DONOVAN W. FRANK  
                                             Judge of United States District Court

**MEMORANDUM**

Plaintiff Laura Bernstein ("Plaintiff") is a resident of a Minnesota nursing home owned and operated by Defendants Extendicare Health Services, Inc. and Extendicare Homes, Inc. ("Defendants"). Plaintiff sued Defendants alleging violations of Minnesota's consumer protection statutes, including the Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68-.70, the Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-.48, and the False Statement in Advertisement law, Minn. Stat. § 325F.67, based on statements made on Defendants' web-sites and the terms of Defendants' admission agreement.

In a Memorandum Opinion and Order issued on March 4, 2009 (the "March 4 Order") the Court dismissed Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), concluding that Plaintiff failed to state a claim against Defendants upon which relief could be granted. In doing so, the Court considered both Plaintiff's original Complaint and also Plaintiff's First Amended Complaint, which Plaintiff filed during the hearing on Defendants' motion to dismiss.[1] The Court reasoned that Plaintiff failed to state a claim because the statements on which she relied were general and non-specific and, therefore, were akin to puffery, and that some were merely restatements of existing legal obligations imposed by federal and state statutes and regulations. The Court's dismissal was without prejudice, so that Plaintiff might still pursue any claims for negligence regarding her treatment at the nursing home.

---

[1] The First Amended Complaint also added two additional plaintiffs, Lavina Anderson and Marjorie Ditter.

Following the Court's dismissal of her case, Plaintiff sought leave to file a motion for reconsideration pursuant to Local Rule 7.1(g). Out of an abundance of caution, the Court granted the request and granted Plaintiff leave to file a motion for reconsideration regarding two provisions of the Defendants' admission agreement. The Court received Plaintiff's motion, as well as Defendants' opposition to the motion, and heard argument from the parties regarding the issues presented at a hearing held on May 29, 2009. Having considered the record and the arguments of the Parties, the Court respectfully denies Plaintiff's motion.

## I.     Legal Standard

Rule 60(b) provides for relief to be granted upon a showing of "exceptional circumstances." *Mitchell v. Shalala*, 48 F.3d 1039, 1041 (8th Cir. 1995). A motion to reconsider may not be employed to relitigate old issues but may "afford an opportunity for relief in extraordinary circumstances." *Dale & Selby Superette & Deli v. United States Dept. of Agric.*, 838 F. Supp. 1346, 1348 (D. Minn. 1993). Whether to grant relief under Rule 60(b) is within the "sound discretion of the district court." *Mitchell*, 48 F.3d at 1041.

## II.     Grounds for Plaintiff's Motion

Plaintiff moves for reconsideration under Federal Rule of Civil Procedure 60(b). Specifically, Plaintiff claims that grounds for relief exist under Rule 60(b)(1) based on judicial inadvertence, Rule 60(b)(2) based on newly discovered evidence, and that other reasons justify relief under Rule 60(b)(6). The Court considers each argument in turn.

### A. Rule 60(b)(1)

Rule 60(b)(1) provides for relief from a final judgment or order on the grounds of "mistake, inadvertence, surprise or excusable neglect." Relief is available for judicial error under Rule 60(b)(1) only if inadvertence is shown. *CRI, Inc. v. Watson*, 608 F.2d 1137, 1143 (8th Cir. 1979).

Plaintiff claims that this Court did not adequately consider the claims asserted in the First Amended Complaint. Plaintiff contends the claims asserted in the First Amended Complaint were not fully addressed in the briefing on Defendant's motion to dismiss because the Plaintiff filed the First Amended Complaint during the hearing on that motion. Plaintiff argues that this resulted in judicial inadvertence, justifying reconsideration under Rule 60(b)(1). The Court disagrees.

The two provisions at issue are sections E11 and E13 of Defendants' admission agreement. Section E11 states that "[t]he Facility may terminate this Agreement and discharge or transfer the Resident in accordance with federal and state laws." (First Am. Compl. Ex. 1 at 3.) Section E13 states as follows:

> The Facility operates under and in compliance with the terms of Title VI of the Civil Rights Act of 1964. The Facility does not discriminate on the grounds of race, color, gender, age, national origin, religion, marital status, disability, payor source, or other protected class in the admission and treatment of Residents, the accommodations provided, the use of equipment and other facilities, and/or the assignment of personnel to provide services.

(*Id.*) Plaintiff contends that these statements are actionable misrepresentations under Minnesota's consumer protection statutes because Defendants discharge and transfer patients in a manner not in compliance with the law, and because Defendants

discriminate against patients on the basis of payor source by favoring higher acuity Medicare patients over Medicaid patients.

The Court concludes that neither of these provisions gives rise to an actionable claim nor provide a basis for reconsideration of the Court's March 4 Order. First, the Court concludes Plaintiff's claims regarding provisions E11 and E13 are similar to claims the Court dismissed in the March 4 Order and are without merit for the same reasons expressed therein.

The March 4 Order considered claims regarding paragraph A1 of Defendants' admission agreement. The Court concluded that paragraph A1, which stated that Defendants would provide certain care and services "as required by law," was too general and non-specific to serve as the basis for a claim under Minnesota's consumer protection laws.[2] The statement was, therefore, similar to puffing statements regarding quality.

---

[2] In its March 4 Order, the Court further held that paragraph A1 merely restated legal obligations imposed under federal and state statues and regulations and, therefore, the provision was not a separate and independent promise on which relief could be based. Rather, to the extent that violations of such legal obligations occurred, Plaintiff and similarly situated nursing home residents could pursue any claims provided by the specifically applicable statutes and regulations. The same reasoning applies to Sections E11 and E13 of the admission agreement, which are general statements of obligations imposed under federal and state statutes and regulations. *See* 42 U.S.C. § 1395i-3(c)(2) (governing patients' transfer and discharge rights); 42 U.S.C. § 1396r(c)(2)(F) (governing transfer or discharge of patients when a facility withdraws from a State plan under 42 U.S.C. 1396, *et seq.*); 42 C.F.R. § 483.12 (stating admission, transfer and discharge rights of nursing home patients); Minn. Stat. § 144.651, subd. 29 (Minnesota Health Care Bill of Rights provision governing transfers and discharges); Minn. Stat. § 256B.48, subd. 1(e) (providing that a nursing home may not receive medical assistance payments unless it refrains from discrimination "in admissions, services offered, or room assignment on the basis of status with regard to public assistance"); 42 U.S.C. § 1395i-3(c)(4) (requiring nursing homes to maintain identical policies and practices regarding

(Footnote Continued on Next Page)

As the Court noted in its March 4 Order, puffery includes exaggerated blustering or boasting and vague, subjective statements of superiority. *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004) (holding statement that product was "America's Favorite Pasta" was puffery); *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1498 (D. Minn. 1996) (adopting report and recommendation concluding statement that lens maker used the "most advanced equipment available" was puffery). General assertions of quality are also puffery because "quality" is a vague, subjective concept. *Am. Italian Pasta Co.*, 371 F.3d at 393; *see also Evanston Hosp. v. Crane*, 627 N.E.2d 29 (Ill. App. Ct. 1993) (holding that statements that hospital would provide "high quality" care to patients were expressions of opinion or "puffing"); *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109 (8th Cir. 1999) (holding statements of product superiority and that product was "industry approved" were puffery). Such statements cannot serve as the basis for a consumer fraud action because they are too general and non-specific to support a claim and because "quality" is too subjective to be evaluated.[3]

---

(Footnote Continued From Previous Page)
transfer, discharge and covered services regardless of payor source); 42 U.S.C. § 1396r(c)(4) (same language); 42 C.F.R. 483.12(c)(1) (same language).

[3] The Court notes that the Minnesota Deceptive Trade Practices Act does contain a reference to quality, stating that it is a violation of that statute for one to "represent[] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Minn. Stat. § 325D.44, subdivision 1(7). In this case, Plaintiff essentially argues that Defendants misrepresented their services as being of a particular quality, namely legally compliant, when the services did not comply with the law. This, however, would be too diffuse a standard. This statute is targeted toward more specific statements of the particular characteristics of goods or services so that consumers can evaluate the goods or services at issue and

(Footnote Continued on Next Page)

Plaintiffs claims, reduced to their essence, are claims regarding the quality of the services she and other residents received at Defendants' nursing homes. Plaintiff does not claim that services were denied to her entirely. Instead, she contends that the services provided were not in compliance with law, that she relied on the Defendants to provide legally compliant services, and thus she did not receive the general quality of service that she anticipated. Such claims cannot form the basis of a consumer protection action.

The cases Plaintiff cites to support her claims do not counsel otherwise. One case in particular, *Alsides v. Brown Institute, Ltd.*, 592 N.W.2d 468 (Minn. Ct. App. 1999), supports the Court's reasoning. In *Alsides*, the plaintiffs contended that the defendant failed to provide educational services as represented. The Court concluded that the plaintiffs' claims were of two types. The first set of allegations concerned promised services that were not provided at all. These claims were specific enough to proceed and included claims that the defendant promised and failed to train the plaintiffs on specific computer software systems and using specific types of computers, that the number of computers was inadequate and computers were not state-of-the-art, that teachers were tardy or absent and failed to offer instruction, and that the defendant failed to deliver the number of hours of instruction promised in its materials. *Alsides*, 592 N.W.2d at 474 n.3.

---

(Footnote Continued From Previous Page)
choose among offerings in accordance with their needs. *Alternative Pioneering Sys., Inc. v. Direct Innovative Prods., Inc.*, 822 F. Supp. 1437 (D. Minn. 1993). Unlike products or services that are marketed to do some specific act or include some specific characteristic, all nursing homes are required to comply with the law.

The second subset of claims concerned allegations that the defendant failed to provide services of the quality that were promised. The court upheld the dismissal of the claims concerning the general quality of the educational services provided, concluding that they constituted claims of educational malpractice. *Id*. at 472. The court characterized these claims as asserting that the educational institution failed to perform adequately, as opposed to claims that services were not performed at all, and noted that an inquiry into claims challenging the adequacy of educational services would require courts to become overseers of the day-to-day operations of educational institutions. *Id*. at 472. For this and other policy reasons, the court concluded that claims of educational malpractice could not be maintained. Here, Plaintiff's claims as to the quality of care provided are similar to the educational malpractice claims made by the plaintiffs in *Alsides*.

Plaintiff's claims are also distinguishable from the allegations referenced in *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990 (7th Cir. 2004). There, the Seventh Circuit considered an allegation that a nursing home promised to provide continuing care to residents who became eligible for Medicaid, when in fact the nursing home was not licensed to provide services to Medicaid patients.[4] Unlike an assertion that services will be of a certain quality, this case involved a specific promise made regarding

---

[4] The plaintiff in *Corley* could not assert a claim based upon this representation because she never became eligible for the Medicaid program and, therefore, did not suffer an injury as a result of the misrepresentation. The Seventh Circuit noted, however, that plaintiffs in another case pending in Illinois state court were pursuing this claim. *Corley*, 388 F.3d at 996.

8

continuing care which the nursing home knew it could not fulfill. The nursing home's misrepresentation, therefore, was similar to the actionable promises in *Alsides* because the nursing home failed entirely to deliver on its promise. In this case, however, Plaintiff points to nothing other than general statements of legal obligations, and no specific promise, to support her claims.

Further, the Court notes that if Plaintiff's allegations regarding the failure to provide legally compliant services were sufficient to state a claim under Minnesota's consumer protection statutes, a consumer protection class action could be brought every time a nursing home received a deficiency notice from the state indicating a failure to comply with a legal requirement. This would allow litigation to supplant the extensive regulatory structure imposed on nursing homes, and it would insert the courts as overseers of the day-to-day operations of nursing homes, requiring that each interaction between nursing home staff and patients be parsed for possible misstatements. Plaintiff's counsel's argument to this Court directly supported this hypothesis, when he stated that interactions between nursing home staff and patients in preparing a resident assessment inventory and a care plan, and in inter-disciplinary team meetings, all created new promises to patients regarding the level of care they would receive and could constitute fraudulent misrepresentations. (Tr. at 44.)

Second, the Plaintiff's claims fail, even if such a claim could be made, because she did not plead an injury with a causal nexus to an alleged misstatement. In *Group Health Plan, Inc. v. Philip Morris Inc.*, the Minnesota Supreme Court held that parties seeking damages for violations of consumer protection statutes under Minnesota Statute section

9

8.31, which is Minnesota's private attorney general provision, must show a causal relationship between an alleged injury and the alleged wrongful conduct. 621 N.W.2d 2, 13-14 (Minn. 2001). The court further concluded that this causal nexus could be proven by showing reliance or by other means, either by direct or circumstantial evidence. *Id*. at 14. Plaintiff seeks to proceed under Minnesota Statutes section 8.31 and, therefore, *Group Health* applies to her claims.

Neither Plaintiff, nor Anderson or Ditter, have alleged that they were transferred or discharged in violation of applicable laws or in breach of the admissions agreement. Instead, they allege a more amorphous injury: that as a result of the Defendants' failure to comply with the law they received substandard care and that this care was not of the quality for which they and the Medicaid program paid.[5] As an example, Plaintiff contends that the admission of higher acuity patients without an attendant increase in staffing to deal with such patients led to the Defendants' nursing homes being too thinly staffed, and, as a result, patients waited longer for services and their needs were not adequately met. While these allegations are certainly concerning, they are not sufficient for Plaintiff to properly plead a consumer protection claim under the statutes she identified. Plaintiff has not shown a causal nexus between any of Defendants' alleged misstatements and any injury she suffered.[6]

---

[5] Lavina Anderson's care was paid for via private insurance and Medicare, rather than with Medicaid.

[6] Plaintiff has alleged that she was injured while being transported by staff at her nursing home. The Court specifically considered this allegation in deciding to dismiss

(Footnote Continued on Next Page)

Ultimately, Plaintiff was required to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). Such facts must be stated with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964-65. The standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965. Based on the allegations in the Complaint and First Amended Complaint, Plaintiff did not meet this burden because her claims rested on general, non-specific statements of legal obligations imposed under federal and state laws and regulations, essentially amounting to a claim based on the quality of the services provided, and because Plaintiff failed to allege a connection between the violation of those standards and an injury she suffered that resulted from those violations.

The Plaintiff failed to state a claim upon which relief could be granted and dismissal was proper under Rule 12(b)(6). In addition, the Court's decision did not result from judicial inadvertence. Therefore, the relief Plaintiff seeks is not proper under Rule 60(b)(1).

**B.      Rule 60(b)(2)**

Plaintiff claims that newly discovered evidence supports her motion for reconsideration. Motions under Rule 60(b)(2) on the ground of newly discovered evidence are viewed with disfavor. *U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc.*,

---

(Footnote Continued From Previous Page)
her claims without prejudice, rather than doing so with prejudice, so that Plaintiff would not be barred from pursuing her negligence claim as a result of her attorneys' failure to plead negligence on her behalf in this forum or any other.

11

320 F.3d 809, 815 (8th Cir. 2003). A movant may prevail on a Rule 60(b)(2) motion by showing: (1) the evidence was discovered after trial; (2) due diligence was exercised to discover the evidence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence is such that a new trial would probably produce a different result. *Id.*

Plaintiff's newly discovered evidence comes in two forms. First, Plaintiff produced an affidavit from Shelley Bhola, R.N. (Doc. No. 52.) Bhola indicates that she was the Director of Nursing for the Galtier Health Center owned by Defendant Extendicare Health Services, Inc. from 1999 until 2003. Bhola's affidavit asserts that, in 2002, the Galtier facility transferred residents in violation of federal and state laws. Bhola contends that Medicaid residents were transferred or discharged to make room for more profitable, higher acuity Medicare residents. Bhola further indicates that the facility was understaffed and that, as a result, she believes that patients were endangered.

The Court concludes that Bhola's affidavit is insufficient to warrant reconsideration of the Court's March 4 Order. Plaintiff's original Complaint contains allegations concerning the alleged transfer or discharge of residents in violation of law and of discrimination based on payor source. (*See* Compl. ¶¶ 54, 67 (alleging discharge of Medicaid residents, particularly those without families, to create room for Medicare patients); ¶ 55 (alleging when only one or two beds were open, such beds were held for Medicare patients and other types of admissions were denied); ¶¶ 56 and 60 (alleging Defendants favored Medicare admissions).) Plaintiff does not indicate on what evidence these original claims were based. Plaintiff notes that she discovered new evidence the

12

day before the hearing on Defendants' motion to dismiss, but she does not specifically identify this new evidence.

Bhola's affidavit is dated April 20, 2009, but all of the allegations contained therein relate to events that took place in late 2002 and early 2003, over six years ago. It is unclear why Plaintiff could not have discovered this evidence earlier given the age of the events, and Plaintiff offered no explanation as to why Bhola's information was not previously available to her. Therefore, Plaintiff has not shown that due diligence was exercised to discover the evidence. Further, the Court has determined that Plaintiff, along with plaintiffs Anderson and Ditter, fail to state a claim with respect to resident discharge and transfer allegations and allegations of payor source discrimination. Therefore, Bhola's affidavit is not material, and the information contained therein does not remedy the deficiencies in Plaintiff's claims. Therefore, this evidence would not have produced a different result.

Plaintiff's second subset of new evidence consists of two investigative reports regarding investigations performed by Minnesota Department of Health into resident transfers and discharges. (Aff. of Suzanne M. Scheller in Supp. of Pl.'s Mot. for Recons. ("Scheller Aff.") ¶¶ 5-6, Exs. 4-5.) Plaintiff contends that these documents support her claim, that the documents were requested after the Plaintiff learned of new information the day before the hearing on Defendant's motion to dismiss, and that the documents were obtained between April 10 and April 22, 2009, after the Court issued the March 4 Order. Though both of the documents are stamped "PUBLIC," Plaintiff's memorandum of law in support of her motion for reconsideration indicates that she requested the

13

documents but was led to believe they were no longer available, though ultimately the documents were retrieved from the Minnesota Department of Health's archived files.[7]

Both of these documents are dated January 8, 2003. Plaintiff does not explain specifically how she learned of the information that led her to request these documents and, therefore, it is unclear whether Plaintiff engaged in due diligence to discover this information. The Court concludes, however, that the information in these documents is immaterial and cumulative and would not have produced a different result. The Court has already concluded that Plaintiff fails to state a claim and documents supporting allegations that do not state a claim do not advance Plaintiff's cause.

Further, Plaintiff represents these documents as amounting to more than they do. Plaintiff suggests that these documents substantiate her allegations of unlawful discharge and payor source discrimination. The documents do indicate that residents were discharged or transferred without receiving a required document notifying them of their right to appeal their discharge or transfer and, therefore, that the facility's actions did not comply with legal requirements. The documents note that the facility was assessed with deficiencies as a result of their failure to provide transferred and discharged residents with this form. The documents do not, however, substantiate claims that Defendants have adopted policies discriminating against Medicaid residents, or that whole floors of

---

[7] This assertion is made only in Plaintiff's memorandum of law and is not supported by any statement in the Scheller Affidavit.

residents have been transferred or discharged to make room for Medicare patients, as alleged in the First Amended Complaint.[8]

---

[8] The documents do contain information regarding allegations such as this, showing that regulatory authorities were aware that the concerns existed and pursued them, but the documents do not contain any information suggesting that these charges were substantiated. For instance, one of the documents contains a summary stating that:

> Additional concerns raised by the complainant were also reviewed. According to the complainant, the facility has been instructed by corporate office staff to not admit residents who are receiving Medical Assistance benefits. Staff indicated that, due to a low census, it would be very rare that any admission would be refused. In addition, staff stated that they have never been instructed to refuse the admission of residents on Medical Assistance. Although the complainant indicated that facility staff have been instructed to "exaggerate" the resident assessment instrument in order to facilitate a greater reimbursement rate, staff denied they have received this mandate. The complainant also stated that the corporate office has decreased the staff hours of recreation therapy, pastoral care, social services and contract psychological services. Staff interviewed stated that, although discussion regarding staff cuts occurs during any budget process, they have resisted such cuts of the identified departments due to the psychosocial needs of the majority of the residents in this facility. Although the complainant indicated that residents are being discouraged from using the Medicare Hospice benefit and utilizing the services of an outside hospice program, staff indicated that no residents have been asked not to enroll in a hospice program. However, one staff person expressed concern that some residents have enrolled without a full understanding of what services/treatments the hospice will actually provide. Therefore, staff have encouraged residents to read the hospice benefit information very carefully and to ask questions of hospice staff so that they could make an informed decision.
>
> During the course of the investigation, some staff members indicated that their work environment is quite stressful and that many employees are very fearful of losing their jobs. Upon questioning, staff indicated that they have heard that employees in other facilities within the same corporation have been terminated because they refused to follow "unethical" practices mandated by the corporate office. However, staff

(Footnote Continued on Next Page)

### C. Rule 60(b)(6)

Plaintiff contends that reconsideration should be granted pursuant to Rule 60(b)(6), which is a catch-all provision allowing a court to relieve a party from a final judgment or order for "any other reason that justifies relief." Relief is available under Rule 60(b)(6) only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress, *Murphy v. Missouri Dept. of Corr.*, 506 F.3d 1111, 1117 (8th Cir. 2007), or when such circumstances have prevented the moving party from seeking redress through the usual channels. *Atkinson v. Prudential Prop. Co., Inc.,* 43 F.3d 367, 373 (8th Cir. 1994) (stating that "[e]xceptional circumstances" are not present every time a party is subject to potentially unfavorable consequences as a result of an adverse judgment properly arrived at [and that] exceptional circumstances are relevant only where they bar adequate redress.") Relief under this rule is exceedingly rare as it requires an "intrusion into the sanctity of a final judgment." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 868 (8th Cir. 2007).

Plaintiff argues that exceptional circumstances exist supporting relief under all three circumstances identified above. Plaintiff contends she was denied a full and fair opportunity to litigate her claim, that she is left without redress, and that other channels are not available to her. The Court disagrees.

---

(Footnote Continued From Previous Page)
    could not provide specific information regarding what unethical practices were mandated.

Plaintiff filed an original Complaint and a First Amended Complaint, both of which the Court considered. The Court granted leave to the Plaintiff to file the present Motion for Reconsideration, and heard argument regarding the issues presented. The Court has reviewed the allegations and has concluded that Plaintiff fails to state a claim. This does not mean that Plaintiff's claims were not fully and fairly considered. Plaintiff has already filed a Notice of Appeal and may pursue any claims of error by this Court before the Eighth Circuit.

Further, the Court's March 4 Order does not bar redress of Plaintiff's claims. The Court specifically dismissed Plaintiff's claims without prejudice in order to enable Plaintiff to bring any meritorious claims she may have in this or any other appropriate forum. Therefore, avenues remain for Plaintiff to litigate any remaining claims.

Finally, Plaintiff contends that other channels are not available to address ongoing harm, "such as massive numbers of personal injury claims for all harmed residents or administrative regulation by underfunded state agencies." (Mem. of Law in Supp. of Pl.'s Mot. for Recons. at 14.) The Court notes that Plaintiff's claims, had they proceeded in this Court, would not have addressed these issues. Plaintiff expressly stated that she was not asserting a negligence claim for personal injuries she sustained, she did not allege "massive numbers of personal injury claims" in either of her complaints, and this Court does not have jurisdiction to remedy deficiencies in the funding of administrative agencies of the State of Minnesota.

Nonetheless, the Court notes that avenues of redress remain open to Plaintiff and similarly situated nursing home residents. Any resident harmed as a result of negligence

may bring a negligence claim in state court, and also may complain about their treatment to the Minnesota Department of Health. The state and federal governments have created a complex system of regulation of nursing homes and, as evidenced by Plaintiff's submissions in this case, the Department of Health investigates claims and issues deficiencies against nursing homes that fail to comply with legal requirements.[9] The Court concludes, therefore, that relief pursuant to Rule 60(b)(6) is not warranted.

## III. Conclusion

As the Court noted in its March 4 Order, it is sympathetic to the Plaintiff's condition and concerned about her allegation that she was injured while in Defendants' care. The Court also does not doubt that there are complicated and difficult problems involved in ensuring that nursing home residents are provided with appropriate care and that sometimes residents are not provided with the care and services they need. Nevertheless, as the Court previously stated, the avenue to address such problems is not a consumer protection action like the one brought here. Therefore, the Court denies Plaintiff's request to reconsider its March 4 Order.

D.W.F.

---

[9] The Court finds plausible the statement that the State of Minnesota's agencies are underfunded, though Plaintiff does not support this statement with specific evidence. This Court, however, cannot mandate that the State provide additional funding, or develop regulatory policy for or supervise Minnesota's agencies in the performance of their duties with regard to nursing homes.